# In the United States Court of Appeals for the Eleventh Circuit

COREY ADAMS, BRYAN ARNOLD, KEITH BRADLEY, SABRINA HILL, GARY
KIRK, THANH LE, TOM MOELLER, IESHA PRATHER, MARIA SIMMONS,
SHEKENA TALLEY, AND STEPHEN WILSON

*Plaintiff-Appellants-Cross Appellees,*

*v.*

WAL-MART ASSOCIATES, INC.,

*Defendant-Appellee-Cross Appellant.*

On Appeal from the
United States District Court for the Northern District of Georgia

## JOINT BRIEF OF APPELLANTS-CROSS APPELLEES AND APPELLEE-CROSS APPELLANT

Beverly A. Lucas
LUCAS & LEON, LLC
P.O. Box 752
Clarkesville, GA 30523
(706) 754-2001
beverly@lucasandleon.com

*Counsel for Plaintiffs-Appellants-
Cross Appellees*

Scott A. Keller
Shannon G. Denmark
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave. NW
Suite 700
Washington, DC 20001
(512) 693-8350
scott@lkcfirm.com

*Counsel for Defendant-Appellee-
Cross Appellant*

*(additional counsel listed on inside cover)*

Leah F. Bower
LEHOTSKY KELLER COHN LLP
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735

Adeline K. Lambert
Danielle K. Goldstein
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305

Alyssa K. Peters
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
3920 Arkwright Road
Suite 375
Macon, GA 31210

*Counsel for Defendant-Appellee-
Cross Appellant*

*MARIA SIMMONS V. WAL-MART ASSOCIATES, INC.*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Defendant-Appellee-Cross Appellant Wal-Mart Associates, Inc., and Plaintiffs-Appellants-Cross Appellees Corey Adams, Bryan Arnold, Keith Bradley, Sabrina Hill, Gary Kirk, Thanh Le, Tom Moeller, Iesha Prather, Maria Simmons, Shekena Talley, and Stephen Wilson provide this Certificate of Interested Persons and Corporate Disclosure Statement:

Adams, Corey (Plaintiff-Appellant-Cross Appellee)

Arnold, Bryan (Plaintiff-Appellant-Cross Appellee)

Baker, Darius (Plaintiff, dismissed)

Baldwin, Timothy (Plaintiff, dismissed)

Baya, Jacques (Plaintiff, dismissed)

Bonney, Loriecelle (Plaintiff, dismissed)

Bower, Leah F. (Counsel for Defendant-Appellee-Cross Appellant)

Bradley, Keith (Plaintiff-Appellant-Cross Appellee)

Butts, Rick (Plaintiff, dismissed)

Collier, David (Plaintiff, dismissed)

Constangy, Brooks, Smith & Prophete, LLP (Counsel for Defendant-Appellee-Cross Appellant)

Cooper, Karen Murphy (Plaintiff, dismissed)

Crump, Charlene (Plaintiff, dismissed)

Denmark, Shannon G. (Counsel for Defendant-Appellee-Cross Appellant)

Driscoll, Thomas (Plaintiff, dismissed)

Dugger, Timothy (Plaintiff, dismissed)

Eckwood, Theron (Plaintiff, dismissed)

Franklin, Malik (Plaintiff, dismissed)

Fuller, J. Clay (Magistrate Judge of the U.S. District Court for the Northern District of Georgia)

Goldstein, Danielle K. (Counsel for Defendant-Appellee-Cross Appellant)

Hill, Sabrina (Plaintiff-Appellant-Cross Appellee)

Howard, Anna W. (Magistrate Judge of the U.S. District Court for the Northern District of Georgia)

Jones, Jacquelyn (Plaintiff, dismissed)

Jones, Steve C. (Judge of the U.S. District Court for the Northern District of Georgia)

Keller, Scott A. (Counsel for Defendant-Appellee-Cross Appellant)

Kinard, Shavonta (Plaintiff, dismissed)

Kirk, Gary (Plaintiff-Appellant-Cross Appellee)

Korsen, David N. (Counsel for Defendant-Appellee-Cross Appellant)

Lambert, Adeline K. (Counsel for Defendant-Appellee-Cross Appellant)

Le, Thanh (Plaintiff-Appellant-Cross Appellee)

Lehotsky Keller Cohn LLP (Counsel for Defendant-Appellee-Cross Appellant)

Lucas, Beverly A. (Counsel for Plaintiff-Appellant-Cross Appellee)

Lucas & Leon, LLC (Counsel for Plaintiff-Appellant-Cross Appellee)

McKensie, Felicia (Plaintiff, dismissed)

McLeod, Angelique (Plaintiff, dismissed)

Moeller, Tom (Plaintiff-Appellant-Cross Appellee)

Peters, Alyssa K. (Counsel for Defendant-Appellee-Cross Appellant)

Phaff, Sarah M. (Counsel for Defendant-Appellee-Cross Appellant)

Prather, Iesha (Plaintiff-Appellant-Cross Appellee)

Renaud, Shalon (Plaintiff, dismissed)

Richards, Keith (Plaintiff, dismissed)

Rosado, Juan (Plaintiff, dismissed)

Russell, Kendra (Plaintiff, dismissed)

Simmons, Maria (Plaintiff-Appellant-Cross Appellee)

Smith, Stephanie (Plaintiff, dismissed)

Story, Richard W. (Judge of the U.S. District Court for the Northern District of Georgia)

Swint, Chanta (Plaintiff, dismissed)

Talley, Shekena (Plaintiff-Appellant-Cross Appellee)

Taylor, Rodney (Plaintiff, dismissed)

Tyree, Amanda (Plaintiff, dismissed)

Wal-Mart Associates, Inc. (Defendant-Appellee-Cross Appellant)

Walmart Inc. (WMT) (Parent of Defendant-Appellee-Cross Appellant)

Wilson, Stephen (Plaintiff-Appellant-Cross Appellee)


*/s/ Beverly A. Lucas*
Beverly A. Lucas

*/s/ Scott A. Keller*
Scott A. Keller

## STATEMENT REGARDING ORAL ARGUMENT

The parties request oral argument. These cases raise an important and unsettled issue at the intersection of the Federal Rules of Civil Procedure and the Fair Labor Standards Act. The parties believe that oral argument will assist the Court in evaluating this important issue.

Page

Table of Citations ............................................................................. iv

Introduction .......................................................................................1

Statement of Jurisdiction .................................................................5

Statement of the Issue .....................................................................6

Statement of the Case ......................................................................6

    A. Legal Background ...............................................................6

    B. Factual and Procedural Background .............................9

    C. Standard of Review ..........................................................16

Summary of the Argument............................................................17

Argument ..........................................................................................20

  I. The text of Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and the Fair Labor Standards Act permit stipulated dismissals without prejudice in FLSA actions without court approval. ...........20

    A. Rule 41(a)(1)(A)(ii) generally permits stipulated dismissals without court approval. ................................................................20

    B. FLSA actions are not excepted from Rule 41(a)(1)(A)(ii)'s general rule. .......................................................................24

  II. The district court erred by relying on an inapplicable 40-year-old decision and policy to overcome the plain text of Rule 41(a)(1)(A)(ii) and the FLSA................................................................31

    A. No precedent from this Court or the Supreme Court requires court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii) in FLSA cases. ...................31

      1. *Lynn's Food Stores, Inc. v. United States* does not require court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii). .......................................32

2. Supreme Court precedent does not require court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii). ..............................................44

3. A growing number of courts have rejected a rule requiring court approval of stipulated FLSA dismissals without prejudice under Rule 41(a)(1)(A)(ii). ......................50

B. Policy does not require court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii) in FLSA cases. .......................................................................54

1. Policy concerns weigh against requiring court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii). ..............................................55

2. Policy concerns cannot overcome the plain text of Rule 41(a)(1)(A)(ii) and the FLSA in any event....................62

Conclusion....................................................................................................66

Certificate of Compliance ......................................................................68

Certificate of Service ...............................................................................69

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Absolute Activist Value Master Fund Ltd. v. Devine,*
998 F.3d 1258 (11th Cir. 2021) .......................................................... 22

*Adams v. USAA Cas. Ins. Co.,*
863 F.3d 1069 (8th Cir. 2017) ........................................................... 21

*Alcantara v. Duran Landscaping, Inc.,*
2022 WL 2703610 (E.D. Pa. 2022) .............. 4, 23, 33, 39, 41, 42, 51, 54, 56, 59

*Am. Soccer Co. v. Score First Enters.,*
187 F.3d 1108 (9th Cir. 1999) ........................................................... 22

*\*Anago Franchising, Inc. v. Shaz, LLC,*
677 F.3d 1272 (11th Cir. 2012) ............................. 1, 2, 7, 17, 21, 22, 23, 30, 65

*Anderson v. Team Prior, Inc.,*
2022 WL 16531690 (D. Me. Oct. 28, 2022) .................................... 33

*Andrews v. Persley,*
669 F. App'x 529 (11th Cir. 2016) .......................................... 27, 64

*Appleby v. Hickman Const., Inc.,*
2013 WL 1197758 (N.D. Fla. Mar. 25, 2013) ................................. 41

*Askew v. Inter-Continental Hotels Corp.,*
620 F. Supp. 3d 635 (W.D. Ky. 2022) ............................. 30, 33, 43, 48, 51, 53

*Barbee v. Big River Steel, LLC,*
927 F.3d 1024 (8th Cir. 2019) ........................................................... 46

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
450 U.S. 728 (1981) .................................................................. 50, 57

*Baxter v. Santiago-Miranda,*
121 F.4th 873 (11th Cir. 2024)..........................................................23

*BP P.L.C. v. Mayor & City Council of Balt.,*
593 U.S. 230 (2021)..........................................................55

*Brooklyn Sav. Bank v. O'Neil,*
324 U.S. 697 (1945)..........................................................19, 45, 46

*Brown v. Pontus LLC,*
2019 WL 1495287 (S.D. Ga. Apr. 4, 2019)..........................................................40

*Calderone v. Scott,*
838 F.3d 1101 (11th Cir. 2016)..........................................................29, 63

*Carrillo v. Dandan Inc.,*
51 F. Supp. 3d 124 (D.D.C. 2014)..........................................................41

*Cheeks v. Freeport Pancake House, Inc.,*
796 F.3d 199 (2d Cir. 2015)..........................................................26, 41, 52, 53, 56

*Cheeks v. Freeport Pancake House, Inc.,*
No. 12-cv-04199 (E.D.N.Y. Apr. 5, 2017)..........................................................52

*CMYK Enters., Inc. v. Advanced Print Techs., LLC,*
154 F.4th 1329 (11th Cir. 2025)..........................................................20

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990)..........................................................40

*Corbett v. Pub. Emps.' Ret. Sys.,*
716 F. Supp. 3d 1006 (D. Nev. 2024)..........................................................31, 50

*Crabtree v. Volkert, Inc.,*
2013 WL 593500 (S.D. Ala. Feb. 14, 2013)..........................................................60

*CTS Corp. v. Waldburger,*
573 U.S. 1 (2014)..........................................................62

*D.A. Schulte, Inc. v. Gangi,*
   328 U.S. 108 (1946)........................................................19, 45, 47, 48

*In re Deepwater Horizon,*
   786 F.3d 344 (5th Cir. 2015) ...............................................62

*Encino Motorcars, LLC v. Navarro,*
   584 U.S. 79 (2018) ...............................................................63

*Est. of West v. Smith,*
   9 F.4th 1361 (11th Cir. 2021)............................1, 17, 21, 24

*Evans v. Centurion Managed Care of Ariz. LLC,*
   686 F. Supp. 3d 880 (D. Ariz. 2023)..............................50, 53

*Fails v. Pathway Leasing LLC,*
   2018 WL 6046428 (D. Colo. Nov. 19, 2018) ....................49

*Frank v. Gaos,*
   586 U.S. 485 (2019)..............................................................22

*FTC v. Actavis, Inc.,*
   570 U.S. 136 (2013)..............................................................22

*Giagnacovo v. Covanta Env't Sols., LLC,*
   2020 WL 1974400 (S.D. Ga. Apr. 24, 2020)....................47

*Gilstrap v. Sushinati LLC,*
   734 F. Supp. 3d 710 (S.D. Ohio 2024)...... 33, 39, 42, 43, 44, 45, 51, 53, 59, 60

*Gomez v. City of New York,*
   805 F.3d 419 (2d Cir. 2015) ...............................................61

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,*
   484 U.S. 49 (1987)................................................................27

*Harvin v. Healthcare Funding Sols.,*
   413 F. App'x 180 (11th Cir. 2011) .....................................61

*Hayes v. Nat'l Serv. Indus.*,
  196 F.3d 1252 (11th Cir. 1999) ..........................................................61

*Howard v. Phila. Hous. Auth.*,
  197 F. Supp. 3d 773 (E.D. Pa. 2016) ..............................................58

*Jama v. ICE*,
  543 U.S. 335 (2005)...................................................................27, 28

*Jones v. Bock*,
  549 U.S. 199 (2007)...........................................................................63

*Kennedy v. El Centro Reg'l Med. Ctr.*,
  2024 WL 1361838 (S.D. Cal. Mar. 29, 2024).................................50

*Lackey v. Cagle's Inc.*,
  1998 WL 1037916 (N.D. Ala. Dec. 7, 1998)..................................62

*Lima v. Ranger Env't Servs., LLC*,
  2023 WL 7249641 (S.D. Ala. Nov. 2, 2023) ..................................58

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982)..................... 2, 3, 14, 15, 18, 19, 32, 33, 34, 35,
  36, 37, 38, 39, 40, 44, 45, 48, 55, 60

*Magwood v. Patterson*,
  561 U.S. 320 (2010).........................................................................62

*Marques v. Fed. Rsrv. Bank of Chi.*,
  286 F.3d 1014 (7th Cir. 2002)...................................................21, 43

*\*Martin v. Spring Break '83 Prods., L.L.C.*,
  688 F.3d 247 (5th Cir. 2012)............................................ 36, 37, 46, 50, 52, 53

*Martinez v. Back Bone Bullies Ltd.*,
  2022 WL 782782 (D. Colo. Mar. 15, 2022) ..................................33

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.,*
   957 F.2d 1020 (2d Cir. 1992) ............................................23

*Mei Xing Yu v. Hasaki Rest., Inc.,*
   944 F.3d 395 (2d Cir. 2019) ...........................45, 56, 57, 58

*Matter of Munford, Inc.,*
   97 F.3d 449 (11th Cir. 1996) ......................................22, 23

*Myers v. Mo & Co.,*
   452 F. App'x 856 (11th Cir. 2011) .................................61

*Nall v. Mal Motels, Inc.,*
   723 F.3d 1304 (11th Cir. 2013) ..................................37, 38

*Padilla v. Smith,*
   53 F.4th 1303 (11th Cir. 2022) ......................................61

*Pavelic & LeFlore v. Marvel Ent. Grp.,*
   493 U.S. 120 (1989) .......................................................20

*Perdue v. Kenny A. ex rel. Winn,*
   559 U.S. 542 (2010) .......................................................38

*Picerni v. Bilingual Seit & Preschool Inc.,*
   925 F. Supp. 2d 368 (E.D.N.Y. 2013) .........................56

*United States, ex rel. Polansky v. Exec. Health Res., Inc.,*
   599 U.S. 419 (2023)...................................................6, 27

*Preiser v. Newkirk,*
   422 U.S. 395 (1975).......................................................42

*Reid v. Peterson Farms, Inc.,*
   2024 WL 5374819 (W.D. Mich. Dec. 9, 2024) ............33

*Rodriguez v. United States,*
   480 U.S. 522 (1987).......................................................63

*Ruiz v. Act Fast Delivery of Colorado, Inc.*,
    2017 WL 11545275 (D. Colo. Jan. 9, 2017) ...................................................44

*Samake v. Thunder Lube, Inc.*,
    24 F.4th 804 (2d Cir. 2022) ........................................9, 26, 40, 51, 52

*Secretary v. Preston*,
    873 F.3d 877 (11th Cir. 2017) ...................................................16

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ...................................................40

*Shelton v. Steam Logistics, LLC*,
    2025 WL 3173664 (E.D. Tenn. Nov. 13, 2025) ...................................................55

*Simone v. Sec'y of Homeland Sec.*,
    156 F.4th 1212 (11th Cir. 2025) ...................................................16

*Smith v. Haynes & Haynes P.C.*,
    940 F.3d 635 (11th Cir. 2019) ...................................................23

*Smith v. Williams*,
    67 F.4th 1139 (11th Cir. 2023) .................................. 1, 2, 18, 27, 32, 63, 64, 65

*Soto v. United States*,
    605 U.S. 360 (2025) ...................................................61

*State Nat'l Ins. Co. v. Cnty. of Camden*,
    824 F.3d 399 (3d Cir. 2016) ...................................................7

*State Treasurer of Mich. v. Barry*,
    168 F.3d 8 (11th Cir. 1999) ...................................................22, 57, 58

*T-Mobile S., LLC v. City of Milton*,
    728 F.3d 1274 (11th Cir. 2013) ...................................................63

*United States v. Lopez*,
    562 F.3d 1309 (11th Cir. 2009) ...................................................16

*Vasconcelo v. Miami Auto Max, Inc.,*
    981 F.3d 934 (11th Cir. 2020) ..............................................................6

*Waetzig v. Halliburton Energy Servs., Inc.,*
    604 U.S. 305 (2025).............................................................................62

*Walker v. Home Point Fin. Corp.,*
    571 F. Supp. 3d 1275 (M.D. Fla. 2021) .............................................61

*Walker v. Marathon Petroleum Corp.,*
    684 F. Supp. 3d 408 (W.D. Pa. 2023) .................................33, 42, 43

*Walling v. Portland Terminal Co.,*
    330 U.S. 148 (1947)............................................................................48

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage,*
    564 F.3d 110 (2d Cir. 2009) ........................................................21, 43

## Constitutional Provisions, Statutes, and Rules

U.S. Const. art. III § 2 ..............................................................................42

8 U.S.C. § 164..........................................................................................26

8 U.S.C. § 1329.....................................................................................8, 25

15 U.S.C. § 1681.......................................................................................61

15 U.S.C. § 1692k .....................................................................................61

28 U.S.C. § 1292..............................................................................5, 14, 16

28 U.S.C. § 1331.........................................................................................5

28 U.S.C. § 1915.......................................................................................64

29 U.S.C. § 206...........................................................................................8

29 U.S.C. § 207....................................................................................8, 10

*29 U.S.C. § 216 ........................................... 5, 8, 9, 11, 28, 29, 30, 38, 44

29 U.S.C. § 253 ....................................................................................48

31 U.S.C. § 232 ....................................................................................26

31 U.S.C. § 3730 ...............................................................................8, 26

42 U.S.C. § 1983 ..................................................................................61

42 U.S.C. § 2000e-2 ............................................................................60

42 U.S.C. § 12112 ................................................................................60

Fed. R. Civ. P. 1 ....................................................................................6

Fed. R. Civ. P. 23 ...............................................................7, 17, 24, 25

*Fed. R. Civ. P. 41 ............................................ 1, 2, 6, 7, 8, 12, 17, 18, 19, 21, 23,
24, 25, 26, 40,

Fed. R. Civ. P. 60 ................................................................................62

Fed. R. Civ. P. 66 ...............................................................7, 8, 24, 25

## Other Authorities

Admin. Off. of U.S. Courts, *Statistical Tables for the Federal Judiciary* (June 30, 2025), https://perma.cc/M48N-VF25 ............................59

Christopher Theodorou, *A Facial Reconstruction of Settlements: Analyzing the Cheeks Decision on FLSA Settlements*, 35 Hofstra Lab. & Emp. L.J. 209 (2017) .............................................................57

Emery G. Lee III, *Law Without Lawyers: Access to Civil Justice and the Cost of Legal Services*, 69 U. Miami L. Rev. 499 (2015) ..........................38

Madison G. Conkel, *The Lost Approach to FLSA Settlement Agreements: A Freedom-of-Contract Approach*, 55 Ga. L. Rev. 815 (2021) ........................................................................................59

Noah Finkel & Alex Simon, *4 Trends Responsible For Declining FLSA Filings*, Law360 (May 8, 2025), https://perma.cc/MFA3-3S6W ..................................................................................57

Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84 ............................48

S. Rep. No. 81-640 (1949) ......................................................................48

## INTRODUCTION

These 11 consolidated cases involve the intersection of Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and the Fair Labor Standards Act ("FLSA"). Rule 41(a)(1)(A)(ii) permits parties to "dismiss an action without a court order by filing … a stipulation of dismissal," unless an "applicable federal statute" provides otherwise. Such stipulated dismissals are "self-executing," *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012), and "effective immediately," *Est. of West v. Smith*, 9 F.4th 1361, 1367 (11th Cir. 2021).

The federal statute applicable in these cases is the Fair Labor Standards Act. In each case, a Plaintiff asserts FLSA claims against Defendant Wal-Mart Associates, Inc. ("Walmart") for unpaid overtime. And in each case, that Plaintiff filed a jointly stipulated dismissal without prejudice under Rule 41(a)(1)(A)(ii). Nothing in the FLSA's text takes it out of Rule 41 and requires a court order to dismiss cases brought under it. This Court has already recognized that where there is "no language in [a statute] purporting to limit or condition a plaintiff's right to voluntarily dismiss an action 'without a

court order' under Rule 41(a)," then Rule 41(a) applies as usual. *Smith v. Williams*, 67 F.4th 1139, 1141 (11th Cir. 2023) (per curiam).

Under a straightforward reading of Rule 41(a)(1)(A)(ii) and the FLSA, the parties' stipulated dismissals without prejudice are "self-executing." *Anago*, 677 F.3d at 1278. But the district court refused to enter them. According to the district court, parties cannot stipulate to dismissing FLSA lawsuits without the court's approval. The district court did not derive this requirement from the language of any FLSA provision. Rather, it divined this requirement from an inapplicable 40-year-old decision coupled with its own views on policy. Neither, however, justifies the district court's atextual court-approval rule.

No precedent from either this Court or the Supreme Court requires court approval of stipulated dismissals without prejudice in FLSA cases. The district court relied almost entirely on this Court's 40-year-old decision in *Lynn's Food Stores, Inc. v. United States*, which held that "to approve an 'agreement' between an employer and employees *outside of the adversarial context of a lawsuit brought by the employees* would be in clear derogation of

the letter and spirit of the FLSA." 679 F.2d 1350, 1354 (11th Cir. 1982) (emphasis added).

*Lynn's Food*, however, does not apply here. The stipulated dismissals without prejudice in these cases do not arise "outside of the adversarial context of a lawsuit." *Id.* They were reached after the employees asserted and developed their FLSA claims (unlike in *Lynn's Food*) and with the assistance of counsel (unlike in *Lynn's Food*). The stipulated dismissals without prejudice in these cases also are not "in clear derogation of the letter and spirit of the FLSA." *Id*. They do not purport to waive any substantive FLSA claims (unlike in *Lynn's Food*) but rather seek procedural dismissal without prejudice.

The district court further erred in elevating supposed policy concerns to override the FLSA's straightforward statutory text. To the extent such concerns matter, they counsel *against* the district court's court-approval rule. Such a rule would create additional delay and expense for the parties, who could be forced to continue litigating against their will. It would also demand more of courts, which would need to conduct burdensome fairness

reviews of questionable utility to counseled parties who are more familiar with the facts, circumstances, and merits of their own claims.

A growing number of courts across the country have rejected the district court's court-approval rule for stipulated dismissals in FLSA cases. This court-approval rule for FLSA dismissals "is at odds with the text of Rule 41," "has no support in the FLSA's text," and "makes litigation slower and more expensive." *Alcantara v. Duran Landscaping, Inc.*, 2022 WL 2703610, at *1 (E.D. Pa. 2022). This Court should therefore reject the district court's FLSA court-approval rule for dismissal, and these cases should be remanded with instructions to dismiss without prejudice.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

This Court has jurisdiction under 28 U.S.C. § 1292(b). The district court granted the motions for certification of interlocutory appeal on June 9, 2025.[1] The parties in each case jointly petitioned this Court for permission to appeal "within ten days," 28 U.S.C. § 1292(b), on June 19, 2025.[2] This Court granted permission to appeal on November 13, 2025. *See Simmons*.ECF.1-2 at 7.

---

[1] *See Adams*.Dkt.28 at 9-10; *Arnold*.Dkt.37 at 9-10; *Bradley*.Dkt.37 at 9-10; *Hill*.Dkt.25 at 9-10; *Kirk*.Dkt.30 at 9-10; *Le*.Dkt.30 at 9-10; *Moeller*.Dkt.36 at 9-10; *Prather*.Dkt.32 at 9-10; *Simmons*.Dkt.83 at 9-10; *Talley*.Dkt.34 at 9-10; *Wilson*.Dkt.37 at 9-10. Unless otherwise noted, citations to "Dkt." are to the district court dockets in these cases and citations to "ECF" are to this Court's dockets in these cases. Such citations are preceded by the short form case name for the corresponding case.

[2] ECF 2-2, *Wal-Mart Assocs., Inc.*, No. 25-90012 (11th Cir. June 19, 2025); ECF 2-2, *Wal-Mart Assocs., Inc.*, No. 25-90013 (11th Cir. June 19, 2025); ECF 1-2, *Wal-Mart Assocs., Inc.*, No. 25-90014 (11th Cir. June 19, 2025); ECF 2-2, *Wal-Mart Assocs., Inc.*, No. 25-90015 (11th Cir. June 19, 2025); ECF 1-2, *Wal-Mart Assocs., Inc.*, No. 25-90016 (11th Cir. June 19, 2025); ECF 1-2, *Wal-Mart Assocs., Inc.*, No. 25-90017 (11th Cir. June 19, 2025); ECF 1-2, *Wal-Mart Assocs., Inc.*, No. 25-90018 (11th Cir. June 19, 2025); ECF 1-2, *Wal-Mart Assocs., Inc.*, No. 25-90019 (11th Cir. June 19, 2025); ECF 1-2, *Wal-Mart Assocs., Inc.*, No. 25-90020 (11th Cir. June 19, 2025); ECF 1-2, *Wal-Mart Assocs., Inc.*,

Whether FLSA claims that are resolved through a settlement can be disposed of without court approval through a Rule 41(a)(1)(A)(ii) stipulation of dismissal without prejudice.

**A. Legal Background**

**1.** The Federal Rules of Civil Procedure "govern the procedure in *all* civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). They apply "in actions brought under the Fair Labor Standards Act no less than in any other case." *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 942 (11th Cir. 2020); *see United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023) ("The Federal Rules are the default rules in civil litigation.").

This case involves Federal Rule of Civil Procedure 41(a)(1)(A)(ii). That rule governs voluntary dismissal without a court order through stipulation. Pursuant to Rule 41(a)(1)(A)(ii), a plaintiff "may dismiss an action without a

---

No. 25-90021 (11th Cir. June 19, 2025); ECF 1-2, *Wal-Mart Assocs., Inc.*, No. 25-90022 (11th Cir. June 19, 2025).

court order by filing … a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). This Court has long recognized that "a stipulation filed pursuant to [Rule 41(a)(1)(A)(ii)] is self-executing." *Anago*, 677 F.3d at 1278; *see State Nat'l Ins. Co. v. Cnty. of Camden*, 824 F.3d 399, 406-07 (3d Cir. 2016) ("Every court to have considered the nature of a voluntary stipulation of dismissal under Rule 41(a)(1)(A)(ii) has come to the conclusion that it is immediately self-executing."). "District courts need not and may not take action after the stipulation becomes effective because the stipulation dismisses the case and divests the district court of jurisdiction." *Anago*, 677 F.3d at 1278.

Rule 41(a)(1)(A)(ii) provides for certain limited exceptions. By its text, Rule 41(a)(1)(A)(ii) is "[s]ubject to" only "Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute." Rules 23(e), 23.1(c), 23.2, and 66 do not apply to these cases. But in other cases when Rules 23(e) (class actions), 23.1(c) (derivative actions), or 23.2 (unincorporated-association actions) do apply, the plain text of each rule expressly requires "the court's approval" of a "voluntary dismissal." Similarly, when Rule 66 (receivers) applies, its plain

text likewise expressly requires a "court order" for a "dismiss[al]." As Rule 41(a)(1)(A)'s commentary clarifies, some federal statutes additionally contain "[p]rovisions regarding dismissal." Fed. R. Civ. P. 41 advisory committee's note to 1937 adoption; *see* 8 U.S.C. § 1329 (requiring "the consent of the court" before a "suit or proceeding" can "be settled, compromised, or discontinued"); 31 U.S.C. § 3730(b)(1) ("The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.").

**2.** These cases arise under the Fair Labor Standards Act. That statute mandates certain minimum wages, *see* 29 U.S.C. § 206, and certain maximum hours, *see id.* § 207, for certain employees. For any time worked beyond those maximum hours, employees are entitled to overtime pay at a rate of at least 1.5 times their regular pay rate. *Id.* § 207(a). The FLSA permits individual plaintiffs to bring lawsuits in federal or state court to enforce these requirements. *See id.* § 216(b). Plaintiffs who prevail in such actions are entitled to "the amount of their unpaid minimum wages" or "unpaid

overtime compensation," "an additional equal amount as liquidated damages," and "a reasonable attorney's fee … and costs." *Id.*

Unlike the rules and statutes listed in Rule 41(a)(1)(A) and its commentary as falling outside the ordinary principle allowing self-executing dismissal stipulations, the FLSA does not contain any provision regarding dismissal of such actions. To the contrary, the FLSA "is silent on the issue." *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 815 (2d Cir. 2022) (Menashi, J., concurring) (citation omitted).

### B. Factual and Procedural Background

Plaintiffs are 11 former Walmart associates who allege Walmart failed to pay them overtime wages due. As relevant here, Corey Adams and Bryan Arnold worked as Inbound Area Managers. *Adams*.Dkt.1 ¶¶ 9-10; *Arnold*.Dkt.9 ¶¶ 9-10. Keith Bradley worked as a Systems Area Manager. *Bradley*.Dkt.11 ¶¶ 9-10. Sabrina Hill worked as a Quality Assurance Manager. *Hill*.Dkt.1 ¶ 13. Gary Kirk worked as an Environmental Health and Safety Operations Manager. *Kirk*.Dkt.1 ¶ 10. Thanh Le worked as an Area Manager. *Le*.Dkt.1 ¶¶ 9-10. Tom Moeller worked as a Traffic Manager.

*Moeller*.Dkt.6 ¶¶ 9-10. Iesha Prather worked as an Environmental Health and Safety Area Manager. *Prather*.Dkt.1 ¶ 9. Maria Simmons worked as a Transportation Operations Manager. *Simmons*.Dkt.31 ¶¶ 9-10. Shekena Talley worked as an HR Business Partner and then Senior HR Business Partner. *Talley*.Dkt.6 ¶¶ 16-17. And Stephen Wilson worked as a Maintenance Area Manager. *Wilson*.Dkt.11 ¶¶ 9-10.

Each Plaintiff filed an individual complaint in the Northern District of Georgia, alleging that Walmart failed to pay them overtime wages required by the FLSA.[3] *See* 29 U.S.C. § 207. In particular, each Plaintiff alleges that they were misclassified as exempt from the FLSA's overtime provisions.[4] *See id.*

---

[3]    *See Adams*.Dkt.1 ¶¶ 51-64; *Arnold*.Dkt.9 ¶¶ 51-64; *Bradley*.Dkt.11 ¶¶ 51-64; *Hill*.Dkt.1 ¶¶ 64-77; *Kirk*.Dkt.1 ¶¶ 55-68; *Le*.Dkt.1 ¶¶ 51-64; *Moeller*.Dkt.6 ¶¶ 51-64; *Prather*.Dkt.1 ¶¶ 51-64; *Simmons*.Dkt.31 ¶¶ 51-64; *Talley*.Dkt.6 ¶¶ 62-75; *Wilson*.Dkt.11 ¶¶ 51-64. Plaintiff Sabrina Hill additionally alleged two violations of the Family and Medical Leave Act, *Hill*.Dkt.1 ¶ 78-91, but the district court dismissed one of those claims, *Hill*.Dkt.9 at 9. Plaintiff Shekena Talley additionally alleged a violation of the Equal Pay Act, *Talley*.Dkt.6 ¶¶ 76-92, but the district court dismissed that claim, *Talley*.Dkt.15 at 8.

[4]    *See Adams*.Dkt.1 ¶¶ 53-54; *Arnold*.Dkt.9 ¶¶ 53-54; *Bradley*.Dkt.11 ¶¶ 53-54; *Hill*.Dkt.1 ¶¶ 66-67; *Kirk*.Dkt.1 ¶¶ 57-58; *Le*.Dkt.1 ¶¶ 53-54;

§ 213(a)(1). Plaintiffs seek unpaid overtime and liquidated damages.[5] *See id.*
§ 216(b) (permitting employees to recover in a private FLSA action "their unpaid overtime compensation" and "an additional equal amount as liquidated damages").

Walmart moved to dismiss each Plaintiff's FLSA claim, and the district court denied the motions in relevant part.[6] Each case proceeded to several months of discovery, which the district court extended at the parties' request

---

*Moeller*.Dkt.6 ¶¶ 53-54; *Prather*.Dkt.1 ¶¶ 53-54; *Simmons*.Dkt.31 ¶¶ 53-54; *Talley*.Dkt.6 ¶¶ 64-65; *Wilson*.Dkt.11 ¶¶ 53-54.

[5]    *See Adams*.Dkt.1 at 17 (Prayer for Relief); *Arnold*.Dkt.9 at 17 (Prayer for Relief); *Bradley*.Dkt.11 at 18 (Prayer for Relief); *Hill*.Dkt.1 at 24 (Prayer for Relief); *Kirk*.Dkt.1 at 18 (Prayer for Relief); *Le*.Dkt.1 at 17 (Prayer for Relief); *Moeller*.Dkt.6 at 17 (Prayer for Relief); *Prather*.Dkt.1 at 17 (Prayer for Relief); *Simmons*.Dkt.31 at 17 (Prayer for Relief); *Talley*.Dkt.6 at 23 (Prayer for Relief); *Wilson*.Dkt.11 at 17 (Prayer for Relief).

[6]    *See Adams*.Dkt.4 & 9; *Arnold*.Dkt.10 & 13; *Bradley*.Dkt.12 & 15; *Hill*.Dkt.4 & 9; *Kirk*.Dkt.5 & 10; *Le*.Dkt.5 & 11; *Moeller*.Dkt.9 & 15; *Prather*.Dkt.4 & 9; *Simmons*.Dkt.33 & 53; *Talley*.Dkt.8 & 15; *Wilson*.Dkt.12 & 15.

in many of the cases.[7] The parties exchanged written discovery in each case,[8] and they conducted depositions.[9]

The parties ultimately engaged in mediation in each case and reached a resolution in principle.[10] In light of this resolution, the Plaintiff in each case filed a jointly stipulated dismissal without prejudice under Rule 41(a)(1)(A)(ii).[11] Each stipulation was signed by the parties who had appeared. Fed. R. Civ. P. 41(a)(1)(A)(ii). And each stipulation dismissed the entire "action." *Id.*

---

[7] *See Adams*.Dkt.24 at 1; *Arnold*.Dkt.33 at 1; *Bradley*.Dkt.33 at 1; *Hill*.Dkt.21 at 1; *Kirk*.Dkt.26 at 1; *Le*.Dkt.26 at 1; *Moeller*.Dkt.32 at 1; *Prather*.Dkt.28 at 1; *Simmons*.Dkt.75 at 2; *Talley*.Dkt.30 at 1; *Wilson*.Dkt.32 at 1.

[8] *See, e.g., Adams*.Dkt.16-18; *Arnold*.Dkt.19-24; *Bradley*.Dkt.21-25; *Hill*.Dkt.15; *Kirk*.Dkt.15-20; *Le*.Dkt.16-19; *Moeller*.Dkt.21-23; *Prather*.Dkt.15-19, 22; *Simmons*.Dkt.27, 30, 35-36, 40, 42-46; *Talley*.Dkt.20-23; *Wilson*.Dkt.21-22, 25-26.

[9] *See, e.g., Arnold*.Dkt.26; *Bradley*.Dkt.27; *Moeller*.Dkt.25; *Prather*.Dkt.21; *Simmons*.Dkt.39, 59, 63; *Wilson*.Dkt.24.

[10] *See Adams*.Dkt.26 at 1; *Arnold*.Dkt.35 at 1; *Bradley*.Dkt.35 at 1; *Hill*.Dkt.23 at 1; *Kirk*.Dkt.28 at 1; *Le*.Dkt.28 at 1; *Moeller*.Dkt.34 at 1; *Prather*.Dkt.30 at 1; *Simmons*.Dkt.77 at 1; *Talley*.Dkt.32 at 1; *Wilson*.Dkt.35 at 1.

[11] *See Adams*.Dkt.22 at 1; *Arnold*.Dkt.31 at 1; *Bradley*.Dkt.31 at 1; *Hill*.Dkt.19 at 1; *Kirk*.Dkt.24 at 1; *Le*.Dkt.24 at 1; *Moeller*.Dkt.30 at 1; *Prather*.Dkt.26 at 1; *Simmons*.Dkt.71 at 1; *Talley*.Dkt.27 at 1; *Wilson*.Dkt.30 at 1.

Rather than dismiss the cases under Rule 41(a)(1)(A)(ii),[12] however, the district court issued orders setting a hearing for the parties "to provide sufficient information surrounding [each] Plaintiff's decision to dismiss her FLSA claim."[13] The district court acknowledged the general rule that a "stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii) [i]s self-executing." *Simmons*.Dkt.75 at 3. But the court declined to apply that rule in these cases because it believed FLSA actions are different. According to the district court, there are "only two ways in which unpaid wage claims arising under the FLSA[] can be settled or compromised by employees": (1) under the supervision of the Department of Labor, or (2) with court approval. *Id.* at 5

---

[12] The clerk in *Simmons* initially automatically "dismissed [the case] without prejudice" the day the stipulated dismissal was filed. *Simmons*.Dkt.72 at 1. But the district court subsequently reopened the case, noting that the stipulation of dismissal had been "inadvertently approved by the Clerk … prior to review and approval by the [court]." Simmons.Dkt.73 at 1.

[13] *Adams*.Dkt.24 at 8; *Arnold*.Dkt.33 at 7-8; *Bradley*.Dkt.33 at 7-8; *Hill*.Dkt.21 at 7-8; *Kirk*.Dkt.26 at 7-8; *Le*.Dkt.26 at 7-8; *Moeller*.Dkt.32 at 8; *Prather*.Dkt.28 at 7-8; *Simmons*.Dkt.75 at 8; *Talley*.Dkt.30 at 8; *Wilson*.Dkt.32 at 7-8. The reasoning of the orders is materially identical. For purposes of brevity, this brief will quote from the *Simmons* order as an exemplar.

(citing *Lynn's Food*, 679 F.2d at 1353). The district court rooted this limitation not in the FLSA's text but rather in "the FLSA's purpose of 'protecting workers' and mitigating the 'great inequalities in bargaining power between employers and employees.'" *Id.* at 6 (quoting *Lynn's Food*, 679 F.2d at 1352). Absent its approval in these cases, the district court held, Plaintiffs may not voluntarily dismiss their FLSA claims under Rule 41(a)(1)(A)(ii).

Before the hearing, the parties in each case jointly moved for reconsideration of the district court's decision not to enter the stipulated dismissal or, alternatively, certification of an interlocutory appeal under 28 U.S.C. § 1292(b).[14] After the hearing, the district court denied the motions for reconsideration but certified a single question of law for interlocutory appeal in each case: "whether FLSA claims that are resolved through a settlement can be disposed of without court approval through a Rule 41(a)(1)(A)(ii) stipulation of dismissal without prejudice."[15]

---

[14] *Adams*.Dkt.25; *Arnold*.Dkt.34; *Bradley*.Dkt.34; *Hill*.Dkt.22; *Kirk*.Dkt.27; *Le*.Dkt.27; *Moeller*.Dkt.33; *Prather*.Dkt.29; *Simmons*.Dkt.76; *Talley*.Dkt.31; *Wilson*.Dkt.34.

[15] *Adams*.Dkt.28 at 9-10; *Arnold*.Dkt.37 at 10; *Bradley*.Dkt.37 at 9-10; *Hill*.Dkt.25 at 10; *Kirk*.Dkt.30 at 10; *Le*.Dkt.30 at 9-10; *Moeller*.Dkt.36 at 9-10;

The district court reiterated "that as a general matter, a Rule 41(a)(1)(A)(ii) stipulation of dismissal is self-executing." *Simmons*.Dkt.83 at 4. But it "found FSLA [sic] cases to be an exception … because of the unique policy considerations that the Eleventh Circuit has recognized in the context of FLSA cases." *Id.* (citing *Lynn's Food*, 679 F.2d at 1352-53). The district court noted that the parties had "reached a resolution in principle precipitating" the filing of the stipulated dismissals. *Id.* at 3. Because of this resolution, the district court reasoned, "approval is required" before the cases may be dismissed. *Id.* at 6.

Although it stood by its prior order, the district court noted that "[d]istrict courts throughout the Eleventh Circuit are split on this question." *Id.* at 1; *see id.* at 8 ("[T]here is a significant split on this issue among district courts in the Eleventh Circuit."). It also recognized that "if the Eleventh Circuit agrees with the Parties that the Stipulation of Dismissal is self-

---

*Prather*.Dkt.32 at 9-10; *Simmons*.Dkt.83 at 10; *Talley*.Dkt.34 at 9-10; *Wilson*.Dkt.37 at 10. The reasoning of the orders is materially identical. For purposes of brevity, this brief will again quote from the *Simmons* order as an exemplar.

executing … the entire case is concluded." *Id.* at 7. The court accordingly certified each case for interlocutory appeal under 28 U.S.C. § 1292(b). *See supra* n.15.

On June 19, 2025, the parties in each case jointly petitioned this Court for permission to appeal under 28 U.S.C. § 1292(b). *See supra* n.2. This Court granted the petitions on November 13, 2025. *See Simmons*.ECF.9-2 at 7.

## C. Standard of Review

This Court "review[s] *de novo* a question of law certified by the district court pursuant to § 1292(b)." *Secretary v. Preston*, 873 F.3d 877, 880 n.2 (11th Cir. 2017) (citation omitted). This Court also reviews *de novo* both "the interpretation of rules of federal procedure," *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009), and "questions of statutory interpretation," *Simone v. Sec'y of Homeland Sec.*, 156 F.4th 1212, 1216 (11th Cir. 2025).

# SUMMARY OF THE ARGUMENT

**I.A**. Rule 41(a)(1)(A)(ii) by its terms allows a plaintiff to "dismiss an action *without a court order* by filing … a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added). Such a stipulation "is self-executing," *Anago*, 677 F.3d at 1278, and "is effective immediately," divesting the court of jurisdiction, *Smith*, 9 F.4th at 1367. This rule leaves no role for judicial approval.

The stipulated dismissals at issue satisfied the requirements of Rule 41(a)(1)(A)(ii). Each dismissal covered the entire action and bore the signatures of the appearing parties. Under settled precedent, these dismissals took effect upon submission. *See Anago*, 677 F.3d at 1278. The district court had no discretion to delay or deny their operation.

**I.B.** Rule 41(a)(1)(A)(ii)'s general rule permitting stipulated dismissals without court approval is subject to five exceptions, none of which applies here: "Rules 23(e) [class actions], 23.1(c) [derivative actions], 23.2 [members of unincorporated associations], and 66 [actions in which a receiver has been appointed] and any applicable federal statute." Fed. R. Civ. P. 41(a)(1)(A).

Because the enumerated Rules are inapplicable, the only question is whether the FLSA qualifies as an "applicable federal statute" that overrides Rule 41. It does not. This Court has recognized that Rule 41(a)'s general rule is not displaced where there is "no language in [a statute] purporting to limit or condition a plaintiff's right to voluntarily dismiss an action 'without a court order' under Rule 41(a)." *Williams*, 67 F.4th at 1141 (discussing the Prison Litigation Reform Act ("PLRA")). The FLSA contains no language requiring judicial approval of dismissals. The FLSA is therefore not an "applicable federal statute" displacing Rule 41(a)(1)(A)(ii)'s general rule and the parties' stipulated dismissals were valid under Rule 41(a)(1)(A)(ii).

**II.A**. No binding precedent from this Court or the U.S. Supreme Court requires judicial approval of stipulated dismissals without prejudice in FLSA cases. The district court incorrectly relied on an inapplicable 40-year-old decision of this Court and policy concerns to override the plain text of the FLSA. *Lynn's Food Stores, Inc. v. United States* addressed the enforceability of coercive pre-litigation settlements by uncounseled employees. *See* 679 F.2d at 1354 ("to approve an 'agreement' between an employer and

employees *outside of the adversarial context of a lawsuit brought by the employees* would be in clear derogation of the letter and spirit of the FLSA" (emphasis added)). It did not involve Rule 41 dismissals of litigation without prejudice by counseled employees. Extending *Lynn's Food* to procedural dismissals under Rule 41 ignores both its holding and its rationale and would produce undesirable results. *See infra* Argument II.B.

Like this Court, the Supreme Court has never addressed whether stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii) in FLSA cases require judicial approval. The two cases *Lynn's Food* relied on likewise concern enforcement of settlements, not dismissal procedure. 679 F.2d at 1354 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946), and *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)). Both decisions turned on undisputed liability and coercive releases, and both left open the question presented in this case. Here, liability is disputed, and the employees are represented. Judicial approval of the parties' stipulated dismissals under Rule 41 is not required.

**II.B.** To the extent policy considerations are relevant, they also do not justify a judicial-approval regime. Mandatory judicial review of stipulated dismissals under Rule 41(a)(1)(A)(ii) would increase costs, delay payment, and burden courts. It would force parties to litigate cases they wish to end. It would treat FLSA plaintiffs differently from plaintiffs under other statutes that aim to protect individual rights. And even if policy favored review, courts may not override clear text with policy preferences. The rule and statute speak plainly: The stipulated dismissals took effect upon filing, and the district court erred by refusing to recognize that result.

ARGUMENT

I. **The text of Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and the Fair Labor Standards Act permit stipulated dismissals without prejudice in FLSA actions without court approval.**

   A. **Rule 41(a)(1)(A)(ii) generally permits stipulated dismissals without court approval.**

   1. "As with any rule of procedure, [the] analysis begins with the text."

*CMYK Enters., Inc. v. Advanced Print Techs., LLC*, 154 F.4th 1329, 1334 (11th Cir. 2025); *see Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning."). This

Court has recognized "Rule 41(a)(1)(A) means precisely what it says." *Smith*, 9 F.4th at 1367 (citation omitted).

Rule 41(a)(1)(A)(ii) allows a plaintiff to "dismiss an action *without a court order* by filing … a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added). Such a stipulation "is self-executing," *Anago*, 677 F.3d at 1278, and "is effective immediately," *Smith*, 9 F.4th at 1367. It "dismisses the case … upon filing unless it explicitly conditions its effectiveness on a subsequent occurrence." *Anago*, 677 F.3d at 1278.

"The reason for the dismissal is irrelevant under Rule 41(a)(1)." *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1080 (8th Cir. 2017). As the Seventh Circuit held, "one doesn't need a good reason, or even a sane or any reason, to dismiss a suit voluntarily." *Marques v. Fed. Rsrv. Bank of Chi.*, 286 F.3d 1014, 1017 (7th Cir. 2002). As "long as the plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for [courts] to judge." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009) (citation omitted).

That is because Rule 41(a)(1)(A) expressly provides that a stipulated dismissal does not require a "court order." Such stipulation thus "leaves no role for the court to play." *Am. Soccer Co. v. Score First Enters.*, 187 F.3d 1108, 1110 (9th Cir. 1999); *see State Treasurer of Mich. v. Barry*, 168 F.3d 8, 14 (11th Cir. 1999) (explaining the district court has "nothing further to do when a stipulation of dismissal without prejudice is filed"). It "divests the district court of jurisdiction" to play any such role. *Anago*, 677 F.3d at 1278; *see Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021) ("[T]he district court is immediately deprived of jurisdiction over the merits of the case.").

By allowing "plaintiffs [to] voluntarily dismiss their claims without a court order" at any time, Rule 41(a)(1)(A)(ii) empowers the parties "to settle their disputes on their own terms." *Frank v. Gaos*, 586 U.S. 485, 492 (2019). The rule reflects Congress's recognition and embrace of the "general legal policy favoring the settlement of disputes." *FTC v. Actavis, Inc.*, 570 U.S. 136, 153 (2013); *see Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) ("[P]ublic policy strongly favors pretrial settlement in all types of

litigation."). Settlements "promote amicable resolution of cases and … avoid the expense of litigation." *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 650 n.7 (11th Cir. 2019). Rule 41(a)(1)(A)(ii) recognizes that, "[t]ypically, settlement rests solely in the discretion of the parties, and the judicial system plays no role." *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1025 (2d Cir. 1992). In order to "stay true to Rule 41's language, it is incumbent on courts to avoid throwing up procedural hurdles to settlement." *Alcantara*, 2022 WL 2703610, at *1.

**2.** Plaintiffs' stipulated dismissals in these cases satisfied the requirements of Rule 41(a)(1)(A)(ii) and were therefore "self-executing." *Anago*, 677 F.3d at 1278. Each joint stipulation of dismissal provided for dismissal of the entire "action," as required by Rule 41(a)(1)(A). *See Baxter v. Santiago-Miranda*, 121 F.4th 873, 884 (11th Cir. 2024) ("Rule 41(a) applies to 'actions,' not claims."). Each was signed by all parties in the action. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii). And each was made without any "explicit[] conditions" basing "its effectiveness on a subsequent occurrence." *Anago*, 677 F.3d at 1278. Because they satisfied the requirements of Rule

41(a)(1)(A)(ii), the stipulated dismissals in these cases should have been "effective immediately" upon their filing. *Smith*, 9 F.4th at 1367.

### B. FLSA actions are not excepted from Rule 41(a)(1)(A)(ii)'s general rule.

Rule 41(a)(1)(A)(ii)'s general rule permitting stipulated dismissals without court approval is by its terms subject to five exceptions: "Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute." Fed. R. Civ. P. 41(a)(1)(A). None of those exceptions applies in these cases.

**1.** The first four exceptions are federal rules that expressly require judicial approval before dismissal. Rule 23(e) on class actions provides that the "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, *voluntarily dismissed*, or compromised *only with the court's approval*." (Emphasis added.) This same restriction applies to "action[s] brought by or against the members of an unincorporated association as a class" under Rule 23.2. Rule 23.1(c) similarly provides that a "derivative action may be settled, *voluntarily dismissed*, or compromised *only with the court's approval*." (Emphasis added.) And Rule 66

likewise demands that an "action in which a receiver has been appointed may be *dismissed only by court order*." (Emphasis added.)

None of those rules applies here. This case does not involve "a certified class" under Rule 23(e). It is not a "derivative action" under Rule 23.1(c). It is not "an action brought by or against the members of an unincorporated association as a class" under Rule 23.2. And it is not "an action in which the appointment of a receiver is sought or a receiver sues or is sued" under Rule 66.

**2.** The question is therefore whether the FLSA is an "applicable federal statute" that excepts actions brought thereunder from Rule 41(a)(1)(A)(ii)'s general rule. Fed. R. Civ. P. 41(a)(1)(A). The answer is no.

Rule 41(a)(1)(A) does not itself identify any particular federal statutes. But the commentary to Rule 41(a)(1)(A) provides two examples. Like the rules identified in Rule 41(a)(1)(A), both examples contain express "[p]rovisions regarding dismissal." Fed. R. Civ. P. 41 advisory committee's note to 1937 adoption. The first is 8 U.S.C. § 1329, which provides that no case involving a violation of the immigration laws "shall be settled,

compromised, or discontinued without *the consent of the court* in which it is pending." (Emphasis added.) The second is 31 U.S.C. § 3730(b)(1), which provides that a private person can "dismiss[]" a case brought under the federal False Claims Act "*only if the court and the Attorney General give written consent* to the dismissal and their reasons for consenting." (Emphasis added.)[16]

Unlike these statutes (and the rules identified in Rule 41(a)(1)(A), *see supra* pp.24-25), the FLSA contains no express requirement for court approval of dismissal. To the contrary, the FLSA "is silent on the issue." *Samake*, 24 F.4th at 815 (Menashi, J., concurring) (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 204 (2d Cir. 2015)).

---

[16]  Both of these statutes were codified elsewhere at the time Rule 41 was adopted. *See* Fed. R. Civ. P. 41 advisory committee's note to 1937 adoption (citing 8 U.S.C. § 164 and 31 U.S.C. § 232). But then, as now, each statute contained an express provision regarding dismissal. *See* 8 U.S.C. § 164 (1934) ("No suit or proceeding for a violation of the provisions of this subchapter shall be settled, compromised, or discontinued without the consent of the court in which it is pending, entered of record, with the reasons therefor."); 31 U.S.C. § 232 (1934) ("Such suit … shall not be withdrawn or discontinued without the consent, in writing, of the judge of the court and the district attorney, first filed in the case, setting forth their reasons for such consent.").

That silence resolves this case. *See Polansky*, 599 U.S. at 436 ("silence on the subject is seldom enough" to establish that Congress has "overridde[n]" the usual application of the Federal Rules of Civil Procedure). As this Court has recognized, Rule 41(a)'s general rule is not displaced where there is "no language in [a statute] purporting to limit or condition a plaintiff's right to voluntarily dismiss an action 'without a court order' under Rule 41(a)." *Williams*, 67 F.4th at 1141; *see Andrews v. Persley*, 669 F. App'x 529, 530 (11th Cir. 2016) (federal statute provided no exception to Rule 41(a) because it contained "no language … indicating Congress' intent to override Rule 41(a)'s operation").

Courts should "not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply." *Jama v. ICE*, 543 U.S. 335, 341 (2005). That is all the more so where—as here, *see supra* pp.25-26—"Congress has demonstrated in yet other statutory provisions that it knows how" to include such a requirement when it wants to. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987).

In fact, the text and context of the FLSA indicate that it does not require court approval of dismissals in FLSA cases. The only FLSA provision that mentions judicial authority to scrutinize or approve anything is Section 216(b). That provision provides a private right of action for employees to recover under the FLSA's overtime and minimum wage provisions. *See* 29 U.S.C. § 216(b). As relevant here, it dictates that the court in such an action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, *allow a reasonable attorney's fee* to be paid by the defendant, *and costs of the action*." *Id*. (emphasis added). This provision requires judicial scrutiny of the *attorney's fees and costs* awarded in private FLSA cases. But it does not mention—let alone require—judicial scrutiny of *stipulated dismissals*. As Section 216(b) demonstrates, "Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest" when it wants to. *Jama*, 543 U.S. at 341.

Section 216(c) further underscores the lack of any judicial-approval requirement for stipulated dismissals under the FLSA. That provision permits the Secretary of Labor to bring an action to enforce the FLSA's

overtime and minimum wage provisions. *See* 29 U.S.C. § 216(c). In such an action, if a settlement is reached, Section 216(c) authorizes the Secretary to "supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees." *Id.* Two aspects of Section 216(c) reinforce the absence of any judicial approval requirement for stipulated dismissals in FLSA cases.

First, whereas Section 216(b) is silent on judicial settlement authority, Section 216(c) expressly endows the *Secretary* with authority to supervise settlement in cases brought under that subsection. Section 216(c) thus demonstrates that "Congress knew how to" provide special settlement authority in FLSA cases. *Calderone v. Scott*, 838 F.3d 1101, 1105 (11th Cir. 2016). It simply chose not to provide the courts with such authority in cases brought under Section 216(b). Even looking just at Section 216(c), the absence of any settlement authority for courts in that provision is noteworthy. It would be odd for Section 216(c) to "bother to specify the Secretary's role in distribution after a resolution, but omit the district court's (purported) role

of approving a settlement in the first place." *Askew v. Inter-Continental Hotels Corp.*, 620 F. Supp. 3d 635, 638 (W.D. Ky. 2022).

Second, Section 216(c) expressly permits employees to waive FLSA rights but says nothing about judicial approval of such waivers. That provision mandates that if an employee accepts payment of unpaid wages or overtime in a Section 216(c) action, "such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b)." 29 U.S.C. § 216(c). As one court recently put it, it would be "strange … to specify that an employee can waive other FLSA rights without mentioning that the agreement has no effect absent court approval." *Askew*, 620 F. Supp. 3d at 639.

In sum, no FLSA provision requires court approval for voluntary dismissal of FLSA actions. The FLSA is therefore not an "applicable federal statute" displacing Rule 41(a)(1)(A)(ii)'s general rule permitting stipulated dismissal without a court order. The parties' stipulated dismissals in these FLSA cases were valid under Rule 41(a)(1)(A)(ii) and were therefore "self-executing." *Anago*, 677 F.3d at 1278.

## II. The district court erred by relying on an inapplicable 40-year-old decision and policy to overcome the plain text of Rule 41(a)(1)(A)(ii) and the FLSA.

The district court did not identify any provision in the FLSA requiring judicial approval of stipulated dismissals without prejudice in FLSA cases. Rather, the district court conjured such a requirement based on an inapplicable 40-year-old decision and policy. Neither justifies the district court's departure from the plain text of Rule 41(a)(1)(A)(ii) and the FLSA.

### A. No precedent from this Court or the Supreme Court requires court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii) in FLSA cases.

Neither this Court nor the Supreme Court has held that FLSA cases are exempt from Rule 41(a)(1)(A)(ii)'s general rule permitting stipulated dismissals without prejudice without a court order. And among those courts that have addressed the issue, a "growing number" have held that FLSA cases are not exempt from Rule 41(a)(1)(A)(ii)'s general rule. *Corbett v. Pub. Emps.' Ret. Sys.*, 716 F. Supp. 3d 1006, 1010 (D. Nev. 2024). This Court should do the same.

1. ***Lynn's Food Stores, Inc. v. United States* does not require court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii).**

This Court has never addressed whether stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii) in FLSA cases require judicial approval. As noted above, this Court properly follows the text when interpreting federal statutes and rules. *See supra* pp.20-21. This Court has recognized that when there is "no language in [a statute] purporting to limit or condition a plaintiff's right to voluntarily dismiss an action 'without a court order' under Rule 41(a)," that rule applies as usual. *Williams*, 67 F.4th at 1141.

Departing from these fundamental principles, the district court purported to derive its judicial-approval rule for FLSA dismissals from this Court's 40-year-old opinion in *Lynn's Food*. *See Simmons*.Dkt.75 at 5-6 (citing *Lynn's Food*, 679 F.2d at 1352-55); *Simmons*.Dkt.83 at 4 (same). But *Lynn's Food* had nothing to say about dismissals—under Rule 41(a)(1)(A)(ii), without prejudice, or otherwise. Rather, *Lynn's Food* held that "to approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation

of the letter and spirit of the FLSA." 679 F.2d at 1354. That holding does not

apply here.[17]

    **a.**    The facts of *Lynn's Food* "are unique." *Alcantara*, 2022 WL 2703610, at

*4; *see, e.g.*, *Walker v. Marathon Petroleum Corp.*, 684 F. Supp. 3d 408, 412 n.3

(W.D. Pa. 2023) ("unique circumstances"); *Askew*, 620 F. Supp. 3d at 640

("unusual procedural posture").

    After an investigation, the Department of Labor determined that Lynn's

Food Stores had violated the FLSA and owed its employees unpaid wages

(exceeding $10,000) and liquidated damages (in an equal amount). *Lynn's

Food*, 679 F.2d at 1352. In light of this determination, Lynn's Food Stores tried

---

[17]    Both parties agree that *Lynn's Food* is inapplicable. To the extent the Court believes that *Lynn's Food* is applicable and mandates court approval for the stipulated dismissal of FLSA actions, the parties preserve their right to argue in any future *en banc* or other appellate proceedings that *Lynn's Food* was incorrectly decided, as a growing chorus of courts has concluded. *See, e.g.*, *Gilstrap*, 734 F. Supp. 3d at 719 ("[B]ecause this Court finds that [*Lynn's Food*'s] holding lacks support, the Court declines to follow its reasoning."); *Reid v. Peterson Farms, Inc.*, 2024 WL 5374819, at *1 (W.D. Mich. Dec. 9, 2024) (*Lynn's Food* "is not persuasive"); *Anderson v. Team Prior, Inc.*, 2022 WL 16531690, at *5 (D. Me. Oct. 28, 2022) (noting that a "growing number of federal courts are rejecting *Lynn's Food*"); *Martinez v. Back Bone Bullies Ltd.*, 2022 WL 782782, at *11 (D. Colo. Mar. 15, 2022) (noting a "growing openness to depart from … *Lynn's Food*").

and failed to reach a settlement with the Department of Labor. *Id*. It then tried and was successful in reaching settlements with some of its employees. *Id.* Fourteen employees ultimately signed agreements whereby they would waive "on behalf of himself (herself) and on behalf of the U.S. Department of Labor" any claim for compensation under the FLSA in exchange for "$1000.00, to be divided among them on a pro rata basis." *Id.* Those employees were not counseled during the settlement negotiations, many of them did not speak English, and none of them had asserted claims against Lynn's Food Stores in court. *Id.* at 1254.

After securing these pre-litigation settlement agreements, Lynn's Food Stores sued the Department of Labor seeking a declaratory judgment to enforce them. *Id.* at 1252. This Court held that "to approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." *Id.* at 1354.

The Court did not identify any provision in the FLSA requiring court approval before an FLSA settlement can be given effect. Rather, it rooted its

decision in the FLSA's "purpose of protecting workers from substandard wages and oppressive working hours." *Id.* at 1352. As the Court explained, "there are often great inequalities in bargaining power between employers and employees." *Id.* at 1352. And it feared that those inequalities can lead to the use of "invidious practices" in securing the "compromise of FLSA claims." *Id.* at 1353, 1355.

The Court accordingly refused to give effect to the pre-litigation settlements at issue. *Id.* at 1354-55. As the Court noted, the employees who had signed the settlements "seemed unaware that the Department of Labor had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute." *Id.* at 1354. None of the employees had "brought suit against Lynn's for back wages." *Id.* There was also "no evidence that any of the employees consulted an attorney before signing the agreements," and "[s]ome of the employees who signed the agreement could not speak English." *Id.*

Because the pre-litigation settlements "compromise[d]" the employees' "FLSA claims" and had been reached "outside of the adversarial context of

a lawsuit brought by the employees," the Court refused to give them effect. *Id.* at 1353-54.

**b.** The district court erred in relying on *Lynn's Foods* in these cases for two primary reasons. The stipulated dismissals without prejudice in these cases do not arise "outside of the adversarial context of a lawsuit," and they do not entail the substantive "compromise of FLSA claims." *Id.* at 1354.

First, the stipulated dismissals without prejudice in these cases do not implicate the holding in *Lynn's Food* because they arise in "the adversarial context of … lawsuit[s] brought by the employees." *Id.* And where the resolution of FLSA claims occurs in "the context of a lawsuit, … the concerns that the Eleventh Circuit expressed in *Lynn's Food Stores* are not implicated." *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 256 n.10 (5th Cir. 2012).

As this Court in *Lynn's Food* recognized, the "initiation of the action by the employees provides some assurance of an adversarial context." 679 F.2d at 1354. In that adversarial context, "employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* A resolution reached in the context of litigation is therefore "more likely to

reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.*

That is precisely the case here, where Plaintiffs have developed, asserted, and actively litigated their FLSA claims in court with the assistance of counsel. Plaintiffs are not "unaware … that they had any rights at all under the [FLSA]." *Id*. Plaintiffs have *already asserted* their FLSA causes of action. They have filed individual complaints. *See supra* p.10. They have successfully defended those complaints against motions to dismiss. *See supra* p.11. And they have completed months of discovery. *See supra* pp.11-12.

Furthermore, Plaintiffs throughout these cases have been "represented by an attorney who can protect their rights under the [FLSA]." *Lynn's Food*, 679 F.2d at 1354; *see Martin*, 688 F.3d at 256 n.10 (distinguishing *Lynn's Food* because employees "knew about their rights under the FLSA and had retained attorneys at least by … the date that [their] attorneys signed their first amended complaint").[18] Counsel assisted Plaintiffs with asserting their

---

[18]    *Nall v. Mal Motels, Inc.* similarly involved a settlement agreement "reached without the [plaintiff's] attorney's knowledge or participation" after the employer "told [the plaintiff] not to bring her attorney, and she

FLSA claims in their complaints. *See supra* n.3. Counsel successfully

defended Plaintiffs' FLSA claims against motions to dismiss. *See supra* n.6.

Counsel represented Plaintiffs during the parties' mediation. *See supra* n.10.

And counsel filed the joint stipulations of dismissal on Plaintiffs' behalf. *See*

*supra* n.11.[19]

Unlike in *Lynn's Food*, then, Plaintiffs are well aware of the FLSA claims

they have pressed in these cases. They have simply made the decision that it

is in their best interest to dismiss them without prejudice. It does not

"protect[] workers," *Lynn's Food*, 679 F.2d at 1252, to force them to spend

additional time and resources continuing to litigate cases they wish to

---

didn't." 723 F.3d 1304, 1305, 1308 (11th Cir. 2013). This Court held that the settlement agreement could not be "approve[d] and enforce[d]." *Id*.

[19] It is common for FLSA plaintiffs to be counseled. *See* Emery G. Lee III, *Law Without Lawyers: Access to Civil Justice and the Cost of Legal Services*, 69 U. Miami L. Rev. 499, 507 (2015) ("[T]he presence of a specialized FLSA bar can be inferred from the 9% of the represented federal docket that these cases comprise."). This is no doubt due at least in part to the FLSA's fee-shifting provision. 29 U.S.C. § 216(b); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010) (explaining that fee-shifting provisions "mak[e] it possible for persons without means to bring suit to vindicate their rights").

resolve and dismiss.[20] FLSA plaintiffs, no less than other plaintiffs, should enjoy the "normal rights of litigants in civil cases—including the right to dismiss their claim voluntarily in exchange for a settlement they find acceptable." *Gilstrap v. Sushinati LLC*, 734 F. Supp. 3d 710, 716 (S.D. Ohio 2024); *see Alcantara*, 2022 WL 2703610, at *1 ("[P]laintiff-employees, represented by able counsel, are equipped to make that decision for themselves.").

Second, *Lynn's Food* is inapplicable because the question presented here does not involve the substantive "compromise of FLSA claims." *Lynn's Food*, 679 F.2d at 1353. The parties do not "seek[] judicial approval" of any

---

[20] For example, the district court here required each Plaintiff to appear and answer questions about the settlement in a June 5, 2025 hearing. *Adams*.Dkt.24 at 8, Dkt.30; *Arnold*.Dkt.33 at 7-8 & n.2, Dkt.36; *Bradley*.Dkt.33 at 7-8 & n.2, Dkt.36; *Hill*.Dkt.21 at 7; Dkt.24; *Kirk*.Dkt.26 at 7, Dkt.29 (unable to attend); *Le*.Dkt.26 at 7-8 & n.2, Dkt.29; *Moeller*.Dkt.32 at 8, Dkt.35; *Prather*.Dkt.28 at 7-8 & n.2, Dkt.31; *Simmons*.Dkt.75 at 8, Dkt.82; *Talley*.Dkt.30 at 8, Dkt.33; *Wilson*.Dkt.32 at 7-8 & n.2, Dkt.36. The court prohibited Zoom attendance despite Plaintiffs' employment obligations and the fact that some Plaintiffs no longer resided in Georgia. *Arnold*.Dkt.33 at 7-8 & n.2 (denying request to appear remotely); *Bradley*.Dkt.33 at 7-8 & n.2 (same); *Le*.Dkt.26 at 7-8 & n.2 (same); *Prather*.Dkt.28 at 7-8 & n.2 (same); *Wilson*.Dkt.32 at 7-8 & n.2 (same).

substantive settlement obligations. *Id.* Nor do they seek the enforcement of any "waiver of statutory rights." *Id.* at 1354. Rather, the parties seek simply to "dismiss an action without a court order by filing … a stipulation of dismissal" without prejudice. Fed. R. Civ. P. 41(a)(1)(A)(ii).

A stipulation of dismissal without prejudice is purely procedural. It is "the opposite of" an "'adjudication upon the merits,'" *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (citation omitted), and it "does not have a res judicata effect," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). A stipulated dismissal without prejudice does not "bar[] the plaintiff from returning later, to the same court, with the same underlying claim." *Semtek*, 531 U.S. at 505. Far from "waiv[ing] … statutory rights," *Lynn's Food*, 679 F.2d at 1354, a stipulated dismissal without prejudice allows the plaintiff to "retain the ability to pursue his claims under the FLSA," *Samake*, 24 F.4th at 815 (Menashi, J., concurring in judgment).[21]

---

[21]    Some courts in FLSA cases have required judicial approval for stipulated dismissals *with prejudice* but not for stipulated dismissals *without prejudice*. *See, e.g.*, *Brown v. Pontus LLC*, 2019 WL 1495287, at *2 (S.D. Ga. Apr. 4, 2019) ("While the Court would not be able to dismiss this case with prejudice without reviewing the proposed settlement agreement, there is no obligation

Other courts have properly recognized this distinction between substantive waiver (as in *Lynn's Food*) and procedural dismissal (as here). *Cf. Cheeks*, 796 F.3d at 204 (distinguishing the question "whether a private FLSA settlement is enforceable" from the question "whether the parties can enter into a private stipulated dismissal of FLSA claims with prejudice … that may later be enforceable"); *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 131 (D.D.C. 2014) ("Whether an FLSA settlement is legally enforceable, which [*Lynn's Food*] addressed, is distinct from whether a court must—or should—evaluate such a proposed settlement *ex ante*."). "[I]t's one thing to say certain settlements are, or might be, unenforceable." *Alcantara*, 2022 WL 2703610, at

---

for the Court to review proposed settlement terms when dismissing an FLSA claim without prejudice."); *Appleby v. Hickman Const., Inc.*, 2013 WL 1197758, at *1 (N.D. Fla. Mar. 25, 2013) ("Where the parties stipulate to dismissal *without* prejudice, the plaintiff is not foreclosed from refiling any FLSA claim at a later time, and thus, such a stipulated dismissal remains self executing without contravening the FLSA."). The FLSA's text mentions neither dismissals *with prejudice* nor dismissals *without prejudice*. *See supra* p.7. But to the extent stipulated dismissals *with prejudice* implicate "unique policy considerations," such considerations do not extend to dismissals *without prejudice* because—as explained above—they do not "decline [the FLSA's] protections." *Cheeks*, 796 F.3d at 205-06 (citation omitted); *supra* pp.39-40.

*4. But "[i]f an employer wants to settle the case and take the risk that it may not be enforceable later, Rule 41 lets it do so." *Id.* at *5.

In fact, it is unclear what jurisdictional basis federal courts have to take it upon themselves to approve or disapprove the resolution of FLSA cases. The federal judicial power is limited to "Cases" and "Controversies." U.S. Const. art. III § 2. This does not include the issuance of "advisory opinions," which do not "affect the rights of the litigants in the case before [the court]" or "resolve 'a real and substantial controversy.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citations omitted).

As courts have increasingly recognized, a court's "[a]pproval of a FLSA settlement is a textbook advisory opinion." *Walker*, 684 F. Supp. 3d at 415. Such approval "has *absolutely no legal effect*—it's a prediction and nothing more." *Gilstrap*, 734 F. Supp. 3d at 724. Fairness review does not affect the rights of the litigants in the FLSA case at hand, nor does it resolve any controversy between the litigants. It "merely opines on ancillary questions (the reasonableness of a settlement) that [are] not before the [c]ourt in a case arising under the FLSA itself." *Id.* at 722; *see Walker*, 684 F. Supp. 3d at 415

42

(such fairness review asks "courts [to] assess *today* whether the settlement agreement will withstand scrutiny if it is challenged later").

**c.** The consequences of extending *Lynn's Food* to Rule 41(a)(1)(A)(ii) stipulated dismissals illustrate the illogic inherent in this position. Requiring court approval of stipulated dismissals would "forc[e] satisfied parties to keep litigating against their wishes." *Askew*, 620 F. Supp. 3d at 643. An FLSA plaintiff could not end her case even if it would be in her interest to do so. She could not dismiss her case, for example, if it was weakened through discovery or if it ultimately proved too cumbersome or expensive to pursue. Rather, she would be locked into her case unless and until the district court let her out. Whereas other plaintiffs may voluntarily dismiss their cases "for any reason," *Wolters Kluwer*, 564 F.3d at 115, even a reason that is not "good" or "sane," *Marques*, 286 F.3d at 1017, FLSA plaintiffs are at the mercy of the courts.

Furthermore, in the context of litigation where the employee is represented by counsel, the "incentive structures simply do not support the fear that employees will be coerced into harmful settlements." *Gilstrap*, 734

F. Supp. 3d at 727.[22] By bringing suit, the employees have demonstrated that they are "[]aware" of their "rights … under the [FLSA]." *Lynn's Food*, 679 F.2d at 1354. Those "employees are often on equal footing with their employer for factual discovery purposes" because "[t]hey know their rates of pay, their hours worked, and their job responsibilities." *Gilstrap*, 734 F. Supp. 3d at 727. That "will often be enough to state a plausible claim that can survive a 12(b)(6) motion to dismiss," *id.*, as these cases ably demonstrate, *see supra* p.11.

> **2.** **Supreme Court precedent does not require court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii).**

Like this Court, the Supreme Court has never addressed whether stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii) in FLSA

---

[22]    These cases are individual actions rather than collective actions. *See supra* p.10; *see also* 29 U.S.C. § 216(b) (permitting both individual and collective actions to enforce the FLSA's wage and overtime provisions). In an FLSA collective action, employees must affirmatively opt in to participate. 29 U.S.C. § 216(b). This "peculiar *opt-in* nature of an FLSA collective action anticipates that all of those parties who settle are actively participating and are represented by counsel." *Ruiz v. Act Fast Delivery of Colorado, Inc.*, 2017 WL 11545275, at *3 (D. Colo. Jan. 9, 2017).

cases require judicial approval. *Lynn's Food* relied on two Supreme Court cases in holding that coercive pre-litigation settlements could not be enforced consistent with the policy of the FLSA. 679 F.2d at 1354 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946), and *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). But those cases, like *Lynn's Food*, do not apply here for two primary reasons.

First, like *Lynn's Food*, neither case involved the question whether stipulated dismissal of an FLSA action requires court approval. *See Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 405 (2d Cir. 2019) ("Notably absent from any of these Supreme Court interpretations of the FLSA is any discussion on whether a … dismissal of an action to vindicate FLSA rights under § 216(b) is conditioned on court approval."); *cf. Gilstrap*, 734 F. Supp. 3d at 718 ("[T]he *O'Neil* and *Gangi* decisions say nothing about whether a federal court is required, or even has the authority, to approve FLSA settlements."). Rather, both cases presented the question whether substantive waivers of FLSA claims could be enforced in a later action. *See Gangi*, 328 U.S. at 112; *O'Neil*, 324 U.S. at 701-02.

Second, neither *O'Neil* nor *Gangi* involved a genuine dispute as to the employer's liability under the FLSA. *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) (explaining that *O'Neil* and *Gangi* "left open the question of whether the FLSA requires judicial approval to settle bona fide disputes over hours worked or wages owed"). Where, as here, a case involves a genuine dispute as to liability, "FLSA substantive rights" are not "bargained away" but rather "validated through a [resolution] of [that] bona fide dispute." *Martin*, 688 F.3d at 257.

In *O'Neil*, the employer agreed with the employee that he was entitled to unpaid overtime under the FLSA. 324 U.S. at 700. The employer offered the employee that unpaid overtime in exchange for the employee's release of, among other things, his right to liquidated damages under the FLSA. *Id.* When the employer later sought to enforce the release after the employee sued for liquidated damages, the Supreme Court held that the release was not enforceable. *Id.* at 710. The Court stressed that its decision did not involve a "bona fide dispute between the parties as to liability." *Id.* at 704.

Similarly, in *Gangi*, there was no dispute between the employer and the employees as to the amount of unpaid overtime that was due under the FLSA. 328 U.S. at 112. There was, however, a dispute as to whether the employer was covered by the FLSA. *Id.* at 111-12. Faced with the threat of a lawsuit, the employer "paid the overtime compensation" to the employees "and obtained a release" of, among other things, the employees' right to liquidated damages under the FLSA. *Id.* at 111-12 & n.5. When the employer later sought to enforce the release after the employees sued for liquidated damages, the Supreme Court held the release was not enforceable even though there was a bona fide dispute as to the FLSA's coverage.[23] 328 U.S. at 114-15. The Court was again clear, however, that its decision did not address "compromises in other situations which may arise, such as a dispute over

---

[23] A dispute as to coverage goes to the legal question whether "employment … is covered by the [FLSA]." *Gangi*, 328 U.S. at 115. A dispute as to liability, by contrast, goes to factual questions about things such as "the number of hours worked or the regular rate of employment," *id.*, or whether any "exemption from the overtime provisions of the FLSA" applies, *Giagnacovo v. Covanta Env't Sols., LLC*, 2020 WL 1974400, at *2 (S.D. Ga. Apr. 24, 2020).

the number of hours worked or the regular rate of employment." *Id.* at 114-15.[24]

It made sense for the Court in *Lynn's Food* to draw from *O'Neil* and *Gangi*, as the settlements there also did not resolve any genuine dispute as to liability. The employees "had not brought suit against Lynn's for back wages." *Lynn's Food*, 679 F.2d at 1354. And the Department of Labor had already determined that Lynn's Food Stores owed north of $10,000 in unpaid wages to those employees. *See id.* at 1352. Thus, as courts have recognized, this Court's "holding [in *Lynn's Food*] pertains specifically to the settlement

---

[24] The result of *O'Neil* and *Gangi* was to discourage employers from voluntarily paying unpaid wages or overtime to employees, as they had "no assurance that [they] will not be sued for an equivalent amount plus attorney's fees under the provisions of section 16(b) of the [FLSA]." S. Rep. No. 81-640 at 8 (1949). And with less voluntary compliance came more litigation. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 155 (1947) (Jackson, J., concurring) ("Interminable litigation, stimulated by a contingent reward to attorneys, is necessitated by the present state of the Court's decisions."). This is, in part, what motivated Congress to permit employees to "compromise" certain FLSA claims that accrued before May 14, 1947. *See* Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84 (codified at 29 U.S.C. § 253(a)). "Again absent from this subsection? Any mention of court approval or oversight." *Askew*, 620 F. Supp. 3d at 639.

of what did not amount to a bona fide dispute." *Fails v. Pathway Leasing LLC*, 2018 WL 6046428, at \*2 (D. Colo. Nov. 19, 2018).

These cases, by contrast, involve precisely the sort of disputes as to liability that the Supreme Court declined to address in *O'Neil* and *Gangi*. Plaintiffs allege that they are owed unpaid overtime because they were misclassified as exempt from the FLSA's overtime provisions. *See supra* p.10. Walmart "denies any violation of any law."[25] Walmart disputes Plaintiffs' assertion that they are properly classified as nonexempt,[26] as well as the number of hours of overtime they worked and their regular rate of pay.[27]

---

[25]   *See Adams*.Dkt.11 ¶ 1; *Arnold*.Dkt.14 ¶ 1; *Bradley*.Dkt.16 ¶ 1; *Hill*.Dkt.11 ¶ 1; *Kirk*.Dkt.11 ¶ 1; *Le*.Dkt.12 ¶ 1; *Moeller*.Dkt.16 ¶ 1; *Prather*.Dkt.10 ¶ 1; *Simmons*.Dkt.55 ¶ 1; *Talley*.Dkt.16 ¶ 1; *Wilson*.Dkt.16 ¶ 1.

[26]   *See, e.g., Adams*.Dkt.11 ¶ 54; *Arnold*.Dkt.14 ¶ 54; *Bradley*.Dkt.16 ¶ 54; *Hill*.Dkt.11 ¶ 67; *Kirk*.Dkt.11 ¶ 58; *Le*.Dkt.12 ¶ 54; *Moeller*.Dkt.16 ¶ 54; *Prather*.Dkt.10 ¶ 54; *Simmons*.Dkt.55 ¶ 54; *Talley*.Dkt.16 ¶ 65; *Wilson*.Dkt.16 ¶ 54.

[27]   *See, e.g., Adams*.Dkt.4-1 at 6-7; *Arnold*.Dkt.10-1 at 8-9; *Bradley*.Dkt.12-1 at 7-8; *Hill*.Dkt.4-1 at 7-8; *Kirk*.Dkt.5-1 at 6; *Le*.Dkt.5-1 at 6-7; *Moeller*.Dkt.9-1 at 7-8; *Prather*.Dkt.4-1 at 6-7; *Simmons*.Dkt.33-1 at 8-9; *Talley*.Dkt.8-1 at 7-8; *Wilson*.Dkt.12-1 at 7-8.

Where, as here, there is a bona fide dispute as to liability, resolution of that dispute does not "abridge[] by contract or otherwise waive[]" the plaintiff's "FLSA rights." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Rather, it "validate[s]" those rights "through a settlement of a bona fide dispute." *Martin*, 688 F.3d at 257. Even where that resolution involves "settlement payments," such payments are "a way to resolve a bona fide dispute" as opposed to "a compromise of guaranteed FLSA substantive rights themselves." *Id.* at 255-57.

3. **A growing number of courts have rejected a rule requiring court approval of stipulated FLSA dismissals without prejudice under Rule 41(a)(1)(A)(ii).**

As courts across the country have noted, a "growing number of courts" have held that the FLSA provides no exception to Rule 41(a)(1)(A)(ii)'s general rule permitting stipulated dismissals without court approval. *Corbett*, 716 F. Supp. 3d at 1010; *Evans v. Centurion Managed Care of Ariz. LLC*, 686 F. Supp. 3d 880, 883 (D. Ariz. 2023) ("many district courts").[28]

---

[28] The list goes on. *See, e.g., Kennedy v. El Centro Reg'l Med. Ctr.*, 2024 WL 1361838, at *3 (S.D. Cal. Mar. 29, 2024) ("Thus, FLSA's 'text and context suggest Congress did *not* intend to override Rule 41's default.'" (citation

The district court noted that the Second Circuit has required judicial approval before an FLSA case may be voluntarily dismissed without prejudice. *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 809 (2d Cir. 2022).[29] But that split out-of-circuit decision is unpersuasive for three primary reasons.

First, the panel that decided *Samake* was sharply divided. Judge Menashi would have held that "[n]othing in the FLSA … deprives a plaintiff of the right to a voluntary dismissal without prejudice." 24 F.4th at 813 (Menashi, J., concurring in judgment). As he explained, "there is no basis in text or

---

omitted)); *Askew*, 620 F. Supp. 3d at 643 ("Faced with a statute that doesn't require court approval before dismissal, and a Rule that presumes the opposite, the Court concludes that FLSA is not an 'applicable federal statute' under Rule 41(a)(1)(A) that prevents dismissal at the parties' behest."); *Alcantara v. Duran Landscaping, Inc.*, 2022 WL 2703610, at *1 (E.D. Pa. 2022) ("To stay true to Rule 41's language, it is incumbent on courts to avoid throwing up procedural hurdles to settlement."); *Gilstrap*, 734 F. Supp. 3d at 720 ("[T]he FLSA says nothing about whether a party may or may not dismiss an FLSA claim voluntarily. In the absence of such a provision, Rule 41(a)'s default rule should apply.").

[29] The district court erroneously suggested that *Samake* involved a "Rule *41(a)(1)(A)(ii)* stipulation of dismissal without prejudice." *Simmons*.Dkt.83 at 3 n.2 (emphasis added). Rather, *Samake* involved a "notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure *41(a)(1)(A)(i).*" 24 F.4th at 806 (emphasis added).

precedent for departing from the usual operation of Rule 41 in this context."

*Id.* at 814. "Neither the text of Rule 41 nor that of the FLSA provides any reason to take away a litigant's usual right to dismiss his case without prejudice." *Id.* Rather, "the FLSA itself is silent on the issue." *Id.* at 815 (citation omitted). Judge Menashi conceded that the Second Circuit had previously "restrained the parties' ability to enter a stipulated dismissal of FLSA claims *with* prejudice." *Id.* (emphasis added) (citing *Cheeks*, 796 F.3d at 202-06). But he would not have "extend[ed] *Cheeks* … to voluntary dismissals *without* prejudice." *Id.* at 814 (emphasis added).[30]

Second, the Second Circuit's requirement of court approval for stipulated dismissal of an ongoing lawsuit is in tension with the Fifth Circuit's opinion in *Martin v. Spring Break '83 Productions, L.L.C.* In that case, in light of "a bona fide dispute … over the number of hours for which [the employees] are owed their set rate of pay," an employer and several

---

[30] *Cheeks* itself was ultimately dismissed pursuant to a stipulation of dismissal without prejudice pursuant to Rule 41(a)(1)(A)(ii) without court approval. *See* Dkt. 29, *Cheeks v. Freeport Pancake House, Inc.*, No. 12-cv-04199 (E.D.N.Y. Apr. 5, 2017).

employees reached a settlement agreement to resolve FLSA claims. *Martin*, 688 F.3d at 255. The Fifth Circuit found the settlement enforceable, holding that "a private compromise of claims under the FLSA is permissible where there exists a bona fide dispute as to liability." *Id.* at 255 (citation omitted). The FLSA's policy concerns, the Fifth Circuit explained, "are not implicated" when "settlement of [a] bona fide dispute d[oes] not occur outside the context of a lawsuit." *Id.* at 256 n.10. In such circumstances, the settlement is a "resolution of … FLSA claims predicated on a bona fide dispute" and not "a compromise of guaranteed FLSA substantive rights themselves." *Id.* at 255; *see id.* at 257 ("FLSA rights were not waived, but instead, validated through a settlement of a bona fide dispute.").

Third, as noted, federal courts across the country have openly declined to follow the Second Circuit's approach to Rule 41(a)(1)(A)(ii). *See, e.g.*, *Gilstrap*, 734 F. Supp. 3d at 720 (The Second Circuit "relied solely on policy considerations to justify [*Cheeks*]. That presents a problem."); *Evans*, 686 F. Supp. 3d at 885 ("respectfully disagree[ing]" with the Second Circuit); *Askew*, 620 F. Supp. 3d at 643 (The Second Circuit "placed far greater weight

on its understanding of the balance of power and resources in the labor context than it assigned to the text of Rule 41(a) and the FLSA itself."); *Alcantara*, 2022 WL 2703610, at *4 ("This Court, respectfully, disagrees with [the Second Circuit's] analysis."). This Court should do the same. *Samake* is not binding on this Court, and its atextual reasoning renders it patently unpersuasive.

No binding precedent requires this Court to mandate court approval of Rule 41(a)(1)(A)(ii) stipulated dismissals without prejudice in FLSA cases. This Court should follow the plain text of Rule 41(a)(1)(A)(ii) and the FLSA, which mandate the exact opposite. *See supra pp.*20-30.

## B. Policy does not require court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii) in FLSA cases.

The district court also departed from Rule 41(a)(1)(A)(ii)'s plain text on the ground that dismissing the actions upon filing of the stipulated dismissals would not "be in keeping with the FLSA's aims of protecting employees." *Simmons*.Dkt.75 at 7. That was error. The district court's opinion not only gets the policy wrong, but it also improperly allows "policy

arguments [to] 'overcome' a clear statutory directive." *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 245 (2021) (citation omitted).

1. **Policy concerns weigh against requiring court approval of stipulated dismissals without prejudice under Rule 41(a)(1)(A)(ii).**

The district court got the policy analysis exactly backwards. In fact, "the policy rationales in play here counsel *against* a court-approval regime, not in favor of it." *Shelton v. Steam Logistics, LLC*, 2025 WL 3173664, at *4 (E.D. Tenn. Nov. 13, 2025) (citation omitted).

First, requiring court approval of stipulated dismissals in FLSA cases would increase litigation costs for all parties. The district court would require parties to satisfy courts that any resolution of FLSA claims is "fair and reasonable" before they can stipulate to dismissal of FLSA actions. *Simmons.*Dkt.75 at 6 (quoting *Lynn's Food*, 679 F.2d at 1355). Making this showing would entail more work by the parties and their counsel— additional fact development, additional briefing, and additional hearings (as the district court ordered in these cases, *see supra* n.20). This work, of course, would take additional time. And that time would entail additional legal fees.

*Cf. Mei Xing Yu*, 944 F.3d at 413 ("The reviewing court [conducting a fairness review] may thus be required to order the parties to come forward with more information, expending time and resources, and unnecessarily increasing attorney's fees.").

Such fees can be particularly onerous for employees, who often settle their FLSA claims "for between $500 and $2000 dollars in unpaid wages." *Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 377 (E.D.N.Y. 2013), *abrogated in part by Cheeks*, 796 F.3d at 204-07. Just as "the law should avoid forcing lawyers to do work that is disproportionate to the size of the case," *Alcantara*, 2022 WL 2703610, at *4, it should similarly avoid forcing litigants to expend resources to resolve their claims that are disproportionate to the recovery they seek.

The district court's court-approval rule would entail not only additional cost for the parties, but also additional delay. The process of seeking and securing court approval would necessarily take time. And that time would only further delay the payment of unpaid wages or unpaid overtime to FLSA plaintiffs. *Cf. Mei Xing Yu*, 944 F.3d at 414 (noting that a similar "fairness

hearing [under Rule 68] could impose a delay of more than six months on the recovery due to plaintiffs").

Such delay of payment runs directly contrary to the FLSA's aim of ensuring that employees "receive '[a] fair day's pay for a fair day's work.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (citation omitted). And it could in fact discourage the filing of FLSA suits. *See* Christopher Theodorou, *A Facial Reconstruction of Settlements: Analyzing the Cheeks Decision on FLSA Settlements*, 35 Hofstra Lab. & Emp. L.J. 209, 215 (2017) ("[T]here is a huge disincentive placed on plaintiff's attorneys to take FLSA claims if judicial scrutiny creates one more layer of delay.").[31]

Second, requiring court approval of stipulated dismissals in FLSA cases would increase judicial workload. Whereas Rule 41(a)(1)(A)(ii)'s ordinary rule leaves courts with "nothing further to do when a stipulation of dismissal

---

[31] Recent commentary on FLSA litigation has theorized that a recent downturn in FLSA cases is due at least in part to the fact that "many jurisdictions require courts to review FLSA settlements for fairness, which can add complexity and delays to the resolution process." Noah Finkel & Alex Simon, *4 Trends Responsible For Declining FLSA Filings*, Law360 (May 8, 2025), https://perma.cc/MFA3-3S6W.

without prejudice is filed," *Barry*, 168 F.3d at 14, the district court's court-approval rule would require courts to scrutinize stipulated dismissals and their circumstances.

This is no small task. Courts deciding whether to approve stipulated dismissals in FLSA cases apply often unwieldy (and widely varying) multifactor analyses. *See, e.g.*, *Mei Xing Yu*, 944 F.3d at 413 (observing that district courts in the Second Circuit regularly analyze "no fewer than nine factors (as well as the well-worn 'totality of the circumstances' standard)"); *Lima v. Ranger Env't Servs., LLC*, 2023 WL 7249641, at *1 (S.D. Ala. Nov. 2, 2023) ("[e]valuating the fairness of an FLSA compromise" by assessing six factors); *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016) (assessing the fairness of FLSA settlements by "conduct[ing] a two-part fairness inquiry"). To properly conduct such an analysis, courts would need to review and analyze any additional briefing prepared by the parties, conduct any necessary hearings, and prepare the requisite orders to effect their decisions. This additional work would delay resolution not only of the

FLSA case at hand, but also of the many other cases of all types on the court's docket.[32]

It is far from clear that all this burden would yield any measurable benefit. Courts have been frank that they, "unlike the parties, do[] not have access to all the facts underlying the litigation." *Gilstrap*, 734 F. Supp. 3d at 728. Because the parties are generally in a better position than the court to analyze any proposed resolution of an FLSA action, the "procedural burden" of a court's fairness review "rarely … yield[s] anything of value to the parties trying to settle." *Alcantara*, 2022 WL 2703610, at *1. After all, "[i]f legal counsel, who owes a duty to the plaintiff alone, cannot secure a mutually beneficial settlement, then how can a federal court, armed with less knowledge and owing no duty to the plaintiff, possibly swoop in and save

_____

[32]    The aggregate effect of this delay is likely to be substantial. Thousands of FLSA cases are filed in federal court each year. *See* Admin. Off. of U.S. Courts, *Statistical Tables for the Federal Judiciary* tbl. C-2 (June 30, 2025), https://perma.cc/M48N-VF25 (4,960 FLSA cases filed in 12-month period ending June 30, 2025, and 5,377 FLSA cases filed in 12-month period ending June 23, 2024). And, "[l]ike much litigation, these FLSA cases often end in settlement agreements between employers and employees." Madison G. Conkel, *The Lost Approach to FLSA Settlement Agreements: A Freedom-of-Contract Approach*, 55 Ga. L. Rev. 815, 817 (2021).

the plaintiff from a purportedly coercive settlement?" *Gilstrap*, 734 F. Supp. 3d at 728 n.11.[33]

Third, requiring judicial approval of stipulated dismissals in FLSA cases suggests that the policy considerations and rights protected by the FLSA are more important than other federal statutes. Various federal statutes were "enacted for the purpose of protecting workers." *Lynn's Food*, 679 F.2d at 1352. Title VII of the Civil Rights Act, for example, prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). And the Americans with Disabilities Act ("ADA") prohibits employment discrimination on the basis of disability. *See* 42 U.S.C. § 12112(a).

Each of these federal statutes—like the FLSA—protects important federal interests. Yet in cases brought under each of these federal statutes— unlike cases brought under the FLSA, under the district court's rule—Rule

---

[33]    The utility of a court's fairness review is further diminished by the "strong presumption in favor of finding a settlement fair" that courts apply precisely because "the [c]ourt is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013) (citation omitted).

41(a)(1)(A)(ii) applies as usual. *See, e.g.*, *Padilla v. Smith*, 53 F.4th 1303, 1309 (11th Cir. 2022) (Title VII); *Myers v. Mo & Co.*, 452 F. App'x 856, 857 (11th Cir. 2011) (ADA).[34] If the FLSA deserves special treatment under Rule 41(a)(1)(A)(ii), "that policy choice is a 'matte[r] for Congress, not [courts], to resolve.'" *Soto v. United States*, 605 U.S. 360, 375 (2025) (citation omitted).

Fourth, ordinary principles of contract law already provide safeguards to address settlements that employers may secure through improper means. *See Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) ("In general, the law of contracts governs the construction and enforcement of settlement agreements."). For example, a court "may set aside a settlement agreement

---

[34] There are, of course, still other federal statutes designed to protect vulnerable populations. Those statutes include Section 1983, *see* 42 U.S.C. § 1983; the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692k; and the Fair Credit Reporting Act ("FCRA"), *see* 15 U.S.C. §§ 1681o, 1681n. As with Title VII and the ADA, parties may also stipulate to dismissal of cases brought under those statutes pursuant to Rule 41(a)(1)(A)(ii)'s normal operation. *See, e.g.*, *Gomez v. City of New York*, 805 F.3d 419, 421-22 (2d Cir. 2015) (Section 1983); *Harvin v. Healthcare Funding Sols.*, 413 F. App'x 180, 180 (11th Cir. 2011) (FDCPA); *Walker v. Home Point Fin. Corp.*, 571 F. Supp. 3d 1275, 1276 (M.D. Fla. 2021) (FCRA).

induced by fraud." *In re Deepwater Horizon*, 786 F.3d 344, 362 (5th Cir. 2015).[35]

A court may also set aside a settlement agreement that is unconscionable. *See, e.g.*, *Lackey v. Cagle's Inc.*, 1998 WL 1037916, at *2 (N.D. Ala. Dec. 7, 1998) (noting that "a settlement might not be enforceable if it … were unconscionable"). These fundamental protections are available to FLSA plaintiffs just as they are available to other plaintiffs.

## 2. Policy concerns cannot overcome the plain text of Rule 41(a)(1)(A)(ii) and the FLSA in any event.

Even if policy rationales favored a court-approval regime, the district court was wrong to allow such concerns to displace the plain text of the FLSA and Rule 41(a)(1)(A)(ii). "Congressional intent is discerned primarily from the statutory text." *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014). Courts should not depart from a statute's "actual text," *Magwood v. Patterson*, 561 U.S. 320, 334 (2010), or "the usual practice under the Federal Rules on the

---

[35] Similarly, Rule 60(b)(3) allows courts to "relieve a party … from a final judgment, order, or proceeding for … fraud … , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. Rule 60(b)(3); *see Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 311-12 (2025) ("We hold that a Rule 41(a) voluntary dismissal without prejudice qualifies as a 'final … proceeding' under Rule 60(b).").

basis of perceived policy concerns," *Jones v. Bock*, 549 U.S. 199, 212 (2007). Courts must "take the model that Congress has constructed, perceived defects and all." *T-Mobile S., LLC v. City of Milton*, 728 F.3d 1274, 1284 (11th Cir. 2013).

That is equally true when it comes to the FLSA. As the Supreme Court has instructed, it is a "flawed premise that the FLSA 'pursues' its remedial purpose 'at all costs.'" *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018) (citation omitted); *cf. Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) ("[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law."). As with any other statute, the FLSA must be interpreted consistent with its "plain text." *Calderone*, 838 F.3d at 1104.

As noted above, this Court has previously honored this basic principle specifically in the context of Rule 41(a)(1)(A). *See supra* p.27. In *Smith v. Williams*, an incarcerated plaintiff proceeding *in forma pauperis* sought to voluntarily dismiss his complaint under Rule 41(a)(1)(A)(i) after the magistrate judge recommended it be dismissed for failure to state a claim.

67 F.4th at 1140 (citing 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1)). The district court declined to enter the voluntary dismissal so that the plaintiff could not "avoid receiving a 'strike' under the [Prison Litigation Reform Act ("PLRA")] and thereby frustrate congressional intent." *Id.* According to the district court, Rule 41(a)(1)(A)(ii) was overcome by the PLRA's purpose of "prevent[ing] prisoners from proceeding [*in forma pauperis*] if they have had three prior cases dismissed on the grounds that the allegations of the complaint were frivolous, malicious, or failed to state a claim." *Id.*

The plaintiff appealed, arguing that "the district court erred by invoking the PLRA's purposes to trump his clear right to voluntarily dismiss the action under Rule 41." *Id.* This Court agreed. *Id.* As this Court explained, there is "no language in the PLRA purporting to limit or condition a plaintiff's right to voluntarily dismiss an action 'without a court order' under Rule 41(a) in the prisoner-litigation context." *Id.* at 1141. Absent such language, it was not for this Court to "rewrite the text to match [its] intuitions about unstated congressional purposes." *Id.* (citation omitted); *see Andrews*, 669 F. App'x at 530 ("We find no language in the PLRA indicating

Congress' intent to override Rule 41(a)'s operation in the prisoner litigation context.").

The FLSA likewise contains "no language … purporting to limit or condition a plaintiff's right to voluntarily dismiss an action." *Williams*, 67 F.4th at 1141; *see supra* p.27. The parties' stipulated dismissals were therefore "effective immediately upon filing," *Williams*, 67 F.4th at 1140-41 (quoting *Anago*, 677 F.3d at 1277), and the district court erred in not giving them immediate effect. *See supra* pp.23-24.

## CONCLUSION

The district court's orders should be reversed, and the cases should be remanded with instructions to dismiss without prejudice.

Respectfully submitted.

_/s/ Beverly A. Lucas_
Beverly A. Lucas
Lucas & Leon, LLC
P.O. Box 752
Clarkesville, GA 30523
(706) 754-2001
beverly@lucasandleon.com

_Counsel for Plaintiffs-Appellants-
Cross Appellees_

_/s/ Scott A. Keller_
Scott A. Keller
Shannon G. Denmark
Lehotsky Keller Cohn LLP
200 Massachusetts Ave. NW
Suite 700
Washington, DC 20001
(512) 693-8350
scott@lkcfirm.com

Leah F. Bower
Lehotsky Keller Cohn LLP
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735

Adeline K. Lambert
Danielle K. Goldstein
Lehotsky Keller Cohn LLP
3280 Peachtree Road NE
Atlanta, GA 30305

Alyssa K. Peters
Constangy, Brooks, Smith &
Prophete, LLP
3920 Arkwright Road
Suite 375
Macon, GA 31210

_Counsel for Defendant-Appellee-Cross
Appellant_

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,962 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced font (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Scott A. Keller*
Scott A. Keller

**CERTIFICATE OF SERVICE**

On January 22, 2026, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send electronic notice of filing

to all counsel of record.

/s/ *Scott A. Keller*
Scott A. Keller